UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOE LOUIS TAYLOR, ) | |
| ) | |
| Petitioner ) | |
| v. ) | CAUSE NO. 3:04-CV-692 RM |
| ) | (Arising from 3:99-CR-44(02) RM) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

OPINION AND ORDER

Joe Louis Taylor has petitioned the court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] Mr. Taylor also seeks an evidentiary hearing on his claims. The filing of a § 2255 petition doesn't automatically give rise to a right to an evidentiary hearing. Cooper v. United States, 378 F.3d 638, 641-642 (7th Cir. 2004); Patel v. United States, 19 F.3d 1231, 1234 (7th Cir. 1994). If a § 2255 petitioner alleges facts that would entitle him to relief, he may request and receive a hearing on his claims. Cooper v. United States, 378 F.3d 641. A hearing is not required, however, if "the motion and files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255. As discussed below, Mr. Taylor has alleged no facts that would entitle him to relief, so no hearing is necessary to determine his § 2255 petition, Menzer v.

---

[1] To the extent Mr. Taylor requested additional time to reply to the government's response and to amend his submissions, his motions are granted, and the parties are informed that the court has considered all submissions by Mr. Taylor in support of his petition.

United States, 200 F.3d 1000, 1006 (7th Cir. 2000), and his petition must be denied.

BACKGROUND

The factual background surrounding the underlying convictions Mr. Taylor now attacks is set forth in United States v. Swift, 220 F.3d 502 (7th Cir. 2000), so the court recites only the facts and procedural background needed to resolve the present § 2255 petition.

Mr. Taylor, who was charged in thirteen counts of a fifteen-count indictment, successfully moved (by way of his first counsel Mark Lenyo) to suppress certain evidence the government obtained during the course of its investigation. The decision granting Mr. Taylor's motion to suppress was reversed on appeal, United States v. Swift, 220 F.3d 502 (7th. Cir. 2000), a decision left undisturbed by the Supreme Court. Swift v. United States, 531 U.S. 1169 (2001) (denying Mr. Taylor's petition for writ of certiorari). Mr. Lenyo represented Mr. Taylor during the proceedings before this court, the court of appeals, and the Supreme Court relating to the motion to suppress.

Following remand, Mr. Taylor requested a substitution of counsel, which the court accommodated, and Kenneth Cotter became Mr. Taylor's counsel for his trial. Mr. Taylor was convicted at trial on all counts, and the court sentenced him to a term of 958 months' imprisonment (274 months on Count 2; 240 months on Counts 1, 6, and 10; 180 months on Counts 4 and 9; and 84 months on Count

3, 300 months on Count 7, and 300 months on Count 11, to be served consecutively to the other terms of imprisonment).

After sentencing, Mr. Taylor again requested substitute counsel for the appeal of his conviction, and Douglas William Godfrey became Mr. Taylor's appellate counsel. The court of appeals affirmed Mr. Taylor's conviction and the Supreme Court denied his petition for writ of certiorari. Mr. Taylor is now before this court, having filed a § 2255 petition in which he alleges ineffective assistance of counsel by Mr. Lenyo, Mr. Cotter, and Mr. Godfrey.

ANALYSIS

As an initial matter, the government asserts Mr. Taylor's petition is time-barred by the Antiterrorism and Effective Death Penalty Act of 1996, which sets a one-year time limit on filing this type of petition from the date the conviction becomes final. The government maintains Mr. Taylor's petition is untimely: Mr. Taylor's conviction became final on November 3, 2003 when the Supreme Court denied his second petition for writ of certiorari, Taylor v. United States, 540 U.S. 999 ([Nov. 3,] 2003), and he filed this petition with the court on November 5, 2004. Mr. Taylor responds by availing himself of the "prison mailbox rule," see Houston v. Lack, 487 U.S. 266 (1988), which would render the petition timely filed on November 3, 2004, the date it was delivered into the prison mail system. Jones v. Bertrand 171 F.3d 499, 502 (7th Cir. 1999).

Rule 3 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides the relevant procedures that must be complied with for Mr. Taylor's petition to have been timely filed.

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. . . . Timely filing may be shown by a declaration in compliance with 28 U.S.C. 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Rule 3(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts. The government contends Mr. Taylor hasn't complied with that rule because he merely set forth the date of deposit and didn't state that first-class postage had been prepaid. Rule 3 doesn't contain an exhaustive list of how an inmate can show timely filing, but merely provides methods that may be used. Mr. Taylor provides adequate evidence that he deposited the petition into the institution's mail system through the certified mail receipt showing both the date of deposit (November 3, 2004) and the date of receipt by the court (November 5, 2004). Mr. Taylor's petition is not time-barred and, accordingly, the court turns to the merits of his § 2255 petition.

"The court may vacate or correct [Mr. Taylor's] sentence if he can show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack," Hays v. United States, 397 F.3d 564, 566 (7th Cir. 2005) (citations and quotations omitted), but such relief is

4

"reserved for extraordinary situations." Id. Mr. Taylor alleges various alleged instances of ineffective assistance of counsel that, he says, provide such extraordinary circumstances.

The Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI. An attorney must not only be present with a criminal defendant at his trial, but must assist the defendant in a way that ensures the trial is fair. Strickland v. Washington, 466 U.S. 668, 685 (1984). A fair trial is one in which the adversarial process functions properly to produce a just result. Strickland, 466 U.S. at 686.

> In order to establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors the result of the proceeding would have been different. In terms of the performance prong, judicial scrutiny of counsel's performance must be highly deferential. Only those who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. The burden for a defendant is high when he attempts to contend his counsel's trial strategy was ineffective because *Strickland* builds in an element of deference to counsel's choices in conducting the litigation. In order to establish prejudice under the second prong, the unprofessional errors of counsel must be so egregious that the trial was rendered unfair and the verdict rendered suspect.

Rodriguez v. United States, 286 F.3d 972, 983 (7th Cir. 2002) (citations and quotations omitted.)

To succeed, Mr. Taylor must demonstrate both deficient performance and actual prejudice to show that his Sixth Amendment right to counsel was violated. Rodriguez v. United States, 286 F.3d at 983. Deficient performance is "measured against an objective standard of reasonableness, under prevailing professional norms." Rompilla v. Beard, 545 U.S. 374, ___, 125 S. Ct. 2456, 2462 (2005) (citations and quotations omitted). Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Rompilla v. Beard, 545 U.S. at __, 125 S. Ct. at 2467 (*citing* Strickland v. Washington, 466 U.S. at 694). Mr. Taylor isn't able to satisfy either Strickland's objective standard of reasonable effectiveness or the actual prejudice prong. Either finding alone defeats Mr. Taylor's Sixth Amendment claim and results in the denial of his § 2255 petition.

INEFFECTIVE ASSISTANCE BY MR. LENYO

Mr. Taylor first claims he received ineffective assistance from Mr. Lenyo, Mr. Taylor's counsel from the pretrial stage (including the successful suppression hearing) through the interlocutory appeal, which resulted in a reversal of the court's suppression order and remand for trial. Mr. Taylor identifies four actions by Mr. Lenyo related to the interlocutory appeal process that resulted in ineffective assistance: Mr. Lenyo, first, didn't contest the government's statement of facts; second, didn't argue that the government changed its legal theory and waived

6

some arguments on appeal; third, didn't file a motion for reconsideration; and, fourth, failed to investigate matters pertaining to the interlocutory appeal.

Mr. Taylor first argues that Mr. Lenyo's failure to object to the government's statement of facts was objectively unreasonable. Mr. Taylor claims the government somehow misrepresented facts by referencing a transcript version of an audio tape submitted as evidence at trial, supplying a "new timeline" not presented to the district court, and certifying materials that were not part of the original issues presented for appeal. Mr. Taylor claims Mr. Lenyo should have objected to the government's statement of facts and the referenced transcript. Federal Rule of Appellate Procedure 29(a)(7) requires a party to file a statement of facts, and the law allows the government to reference a transcript of an audio taped exhibit. *See* United States v. Burke, 781 F.2d 1234, 1246 (7th Cir. 1985). Mr. Taylor hasn't identified any specific facts referenced by the government and either not contained in the record or misrepresented in light of the record. Thus, any failure by Mr. Lenyo to object to the government's statement of facts or its appendix was objectively reasonable under the circumstances.

Mr. Taylor next complains that the government shifted its legal theory on appeal from "attenuation doctrine" to "inevitable discovery," and Mr. Lenyo didn't present a "waiver defense" in opposition. Mr. Lenyo's failure to argue that the government waived its ability to raise certain arguments on appeal is reasonable; nothing in the record indicates that the government affirmatively waived any rights on appeal. *See* United States v. Jaimes-Jaimes, 406 F.3d 845, 847 (7th Cir.

7

2005) ("Waiver is the intentional relinquishment of a known right. Forfeiture is the failure to timely assert a right."). Neither does the record indicate the government forfeited any of its appellate arguments: the government's suppression memorandum adequately raised the same or similar arguments with the court as those raised on interlocutory appeal. Mr. Lenyo's decision to not argue that the government had waived or forfeited certain arguments that the government had not waived or forfeited cannot be found to be objectively unreasonable.

Mr. Taylor next contends the government's inclusion of certain evidence in the record on appeal was erroneous and amounted to fraudulent misrepresentations to the court of appeals. According to Mr. Taylor, the decision of the court of appeals was based upon fraud, so Mr. Lenyo could have filed a motion to reconsider with the appellate court based on the government's non-compliance with Federal Rule of Appellate Procedure 30(b)(1). Mr. Taylor hasn't identified any specific evidence that was referenced by the government and misrepresented in light of the record, and his conclusory statement that the government somehow didn't comply with Appellate Rule 30(b)(1) doesn't provide support for the proposition that a motion for reconsideration could have or should have been filed. Thus, any failure by Mr. Lenyo to file a motion for reconsideration was objectively reasonable under the circumstances.

Finally, Mr. Taylor says Mr. Lenyo failed to investigate certain facts pertaining to the interlocutory appeal. While Mr. Taylor correctly points out that an attorney has a duty to investigate material facts, *see* Rompilla v. Beard, 125

8

S. Ct. at 2462, a petitioner who claims his attorney's failure to do so violated his Sixth Amendment rights must "provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." Richardson v. United States, 379 F.3d 485, 488 (7th Cir. 2003). Mr. Taylor hasn't provided the court with any specific fact Mr. Lenyo should have investigated, so he can't show that Mr. Lenyo's failure to investigate was objectively unreasonable or caused him any actual prejudice.

Mr. Taylor hasn't demonstrated that Mr. Lenyo's representation amounted to ineffective assistance of counsel or that any prejudice resulted from that representation.

INEFFECTIVE ASSISTANCE BY MR. COTTER

Mr. Taylor sets forth six alleged instances of Mr. Cotter rendering ineffective assistance of counsel at trial. Mr. Taylor says Mr. Cotter (1) should have timely filed a motion relating to the identification issue; (2) should have presented impeachment evidence to rebut the testimony of Dale and Debbie Hamel; (3) failed to properly investigate Mr. Taylor's "movie" alibi; (4) should have procured an independent DNA expert to provide a second opinion on the DNA evidence; (5) wrongly allowed Mr. Taylor's prior convictions to be presented to the jury; and (6) failed to raise certain arguments during the sentencing phase. Mr. Taylor can't succeed on any of his six claims.

9

Mr. Taylor first can't show that Mr. Cotter's timing in filing the motions attacking the identification evidence and the line-up procedures is objectively unreasonable. Mr. Cotter filed the motions as timely as he reasonably could be expected to do, and the court denied them, in part, on their merits. Due to Mr. Taylor's own request for new counsel, Mr. Cotter was working with a shorter timetable than usual. The record doesn't show how earlier filings would have altered the trial's outcome. Mr. Taylor hasn't shown that his counsel's actions were objectively unreasonable or that he suffered any prejudice under Strickland.

Mr. Taylor next disputes Mr. Cotter's alleged decision not to impeach Mr. and Ms. Hamel with information contained in a police report submitted by Mr. Taylor in support of his § 2255 motion. Once again, Mr. Taylor can't show that Mr. Cotter's alleged deficiencies were objectively unreasonable. Mr. Cotter impeached Mr. and Mrs. Hamel's identification testimony using information from the police investigation, and Mr. Taylor hasn't shown how Mr. Cotter's alleged decision to not use the police report was anything but sound trial strategy. Further, the information contained in the police report accompanying the petition is not of the sort that could have changed the outcome of the case or rendered the outcome suspect. Mr. Taylor can't show either objective unreasonableness or actual prejudice from the allegedly deficient impeachment of the Hamels.

With respect to his third claim, Mr. Taylor can't show he suffered actual prejudice from Mr. Cotter's alleged failure to properly investigate information relating his alibi. Mr. Taylor complains that his alibi witnesses—Martha and

10

Martina Taylor—were impeached on cross-examination, but Mr. Taylor hasn't adequately explained how the outcome of the trial would have differed had Mr. Cotter learned of the government's impeachment evidence before trial. Other than Mr. Taylor's own assertion that had Mr. Cotter "properly consulted" with him about the time and location of the "movie" he was reviewing with his family, there is a reasonable probability that the jury would have acquitted him on Count 10, the court can't imagine how Mr. Cotter's knowing how the government was going to impeach Martha and Martina Taylor renders Mr. Taylor's conviction on Count 10 suspect. Without such a showing, Mr. Taylor can't demonstrate actual prejudice from Mr. Cotter's alleged failure to investigate.

Mr. Taylor also can't show he suffered any prejudice from Mr. Cotter's decision not to procure a DNA expert to testify on Mr. Taylor's behalf because he hasn't explained what new evidence that DNA expert would have provided to render the jury's verdict suspect. The record reflects ample cumulative evidence linking Mr. Taylor to the bank robberies of which he was convicted, so even if Mr. Cotter's decision could be said to have fallen below the constitutional standard, Mr. Taylor suffered no actual prejudice.

Mr. Taylor next claims Mr. Cotter provided ineffective assistance when he "allowed petitioner's prior convictions to be presented to the jury when petitioner requested counsel to have the fact of his prior convictions stipulated to." Mr. Taylor claims a stipulation would have prevented the jury from hearing the specifics of his prior convictions. Mr. Taylor's claim in this regard is without merit.

At trial, Mr. Taylor's counsel was successful in securing an agreement with the government that prevented the jury from hearing and seeing evidence relating to the specifics of Mr. Taylor's prior convictions. And although Mr. Taylor maintains he requested his counsel to enter into a stipulation related to the fact of his prior convictions, a "stipulation" is a "voluntary agreement between opposing parties," BLACK'S LAW DICTIONARY 1427 (7th ed. 1999), and Mr. Taylor hasn't asserted or argued that the government was willing to enter into such a stipulation, nor has he presented any evidence to establish that the government would have agreed to do so. Mr. Taylor hasn't established that his counsel's performance was objectively ineffective or that he suffered any prejudice.

Finally, Mr. Taylor attacks Mr. Cotter's representation at the sentencing phase of his criminal proceedings—specifically, that Mr. Cotter failed to argue U.S.S.G. § 2K2.1(b)(5) didn't apply to Mr. Taylor's sentence. A miscalculation of the sentencing guidelines by the trial court can be attacked under Strickland. *See* Glover v. United States, 531 U.S. 198 (2001). Mr. Taylor, though, wasn't prejudiced from any application of U.S.S.G. § 2K2.1(b)(5) because, as noted in the court's sentencing memorandum, *see* Sent. Memo. (Nov. 16, 2001), at 3-5, Mr. Taylor is a career offender under U.S.S.G. § 4B1.1, and the length of his sentence wasn't affected by the presence or absence of arguments about application of U.S.S.G. § 2K2.1(b)(5). Mr. Taylor can't show he suffered any actual prejudice under Strickland.

Mr. Taylor hasn't shown either objective unreasonableness or actual prejudice based on the representation provided at trial by Mr. Cotter.

INEFFECTIVE ASSISTANCE BY MR. GODFREY

Mr. Taylor also asserts that Mr. Godfrey, his third appointed counsel, rendered ineffective assistance on his appeal. Specifically, Mr. Taylor claims Mr. Godfrey wrongly abandoned two issues: the suggestive identification issue and the seizure of evidence from the vehicle. Other than identifying the issues and concluding that Mr. Godfrey was ineffective by not raising those issues on appeal, Mr. Taylor points to no facts and cites no law as to why Mr. Godfrey's failure to raise those issues violates the Sixth Amendment. Mr. Taylor's arguments are undeveloped in both fact and law, and "unsupported and undeveloped arguments are waived." Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854, 862 (7th Cir. 2005); *see also* United States v. Wimberly, 60 F.3d 281, 287 (7th Cir. 1995) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). Mr. Taylor isn't entitled to relief based on his claims of ineffective assistance of counsel by Mr. Godfrey.

SENTENCING ISSUES

Finally, Mr. Taylor argues his sentence was unconstitutionally calculated under United States v. Booker, 543 U.S. 220 (2005). Mr. Taylor was sentenced in 2001, and the Supreme Court's ruling in Booker does not apply retroactively to

13

cases such as Mr. Taylor's. McReynolds v. United States, 397 F.3d 479, 481 (7th Cir.) ("[w]e conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005"), cert. denied, 125 S. Ct. 2559 (2005). Thus, Mr. Taylor's argument based on United States v. Booker can't provide the basis for relief on his § 2255 petition.

CONCLUSION

Based on the foregoing, the court

(a) GRANTS Mr. Taylor's motion for an extension of time to file a reply brief [docket # 198] and his motion for leave to amend his submissions [docket # 204], and

(b) DENIES Mr. Taylor's § 2255 petition [docket # 191], his motion for a hearing [docket # 212], and his motion for leave to file a motion for discovery [docket # 213].

SO ORDERED.

ENTERED:  July 10, 2006  


　　　　　　　　　　　　　　 /s/ Robert L. Miller, Jr.  
　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　United States District Court